UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROSE DELVA (F.K.A. ROSE MARSON) and MAXO DELVA, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 12-10100-DPW |
| v. | ) ) | |
| AMERICA'S SERVICING COMPANY and U.S. BANK NATIONAL ASSOCIATION, | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER
August 28, 2012

This case involves allegations of misconduct relating to efforts to obtain the modification of a mortgage secured by real property in Brockton, Massachusetts. Defendant America's Servicing Company has moved for summary judgment with respect to the one remaining claim in the case, in which the Delvas assert that America's Servicing Company engaged in unfair or deceptive acts or practices in violation of G.L. c. 93A. For the reasons stated below, I will grant the motion. Because intervening events make it inappropriate for me to act with finality in this litigation, however, I must now recuse myself and return the case to the Clerk for reassignment.

## I.   BACKGROUND[1]

### A.   *Factual Background*

On May 23, 2006, Maxo Delva executed a promissory note in the amount of three hundred and thirty seven thousand ($337,000) to Mortgage Lenders Network USA, Inc.  The note was secured by a mortgage on the property at 57 Cary Street, Brockton, Massachusetts.  The mortgage identified the lender as Mortgage Lenders Network, USA, Inc., and the mortgagee as Mortgage Electronic Registration Systems, Inc.  On March 17, 2009, Mortgage Electronic Registration Systems assigned the mortgage to U.S. Bank National Association as Trustee.  Defendant America's Servicing Company ("ASC") services the loan, and has done so for some time.

By September 17, 2007, the loan was in default.  In late 2008, the Delvas contacted ASC in order to resolve the default. The Delvas were not successful.  ASC asked for the same documents multiple times, even after the documents had already been

---

[1]  The Delvas have not responded to the Defendant's Statement of Undisputed Material Facts (Dkt. No. 17).  Consequently, I deem the facts set forth in the Defendant's Statement to be admitted by the Delvas.  *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").  Although the Delvas have not submitted any affidavits in support of their opposition to summary judgment, I will treat the Delvas' verified complaint "as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)."  *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991).

provided on several occasions.  Given these difficulties, the
Delvas hired an attorney to assist them.  In September, 2009,
Rose Delva filed for bankruptcy.

On November 14, 2009, ASC offered the Delvas a Special
Forbearance Agreement.  The offer proposed that the Delvas would
make three payments of $1,779.66, due December 1, 2009; January
1, 2010; and February 1, 2010.[2]  The offer stated that it was a
"Special Forbearance, once 3 regular payments have been made, we
will review the account for HAMP."  The Delvas made the three
required payments in a timely manner.

In a letter dated February 25, 2010, ASC informed Maxo
Delva[3] that his request for a loan modification pursuant to HAMP
had been "Denied by Investor."  It stated: "As the loan is still
active in a bankruptcy we will continue reviewing the loan for
any additional options [you] may qualify for."

---

[2]  The Delvas' Verified Complaint alleges that ASC offered
another Special Forbearance Agreement on September 8, 2009, which
required the Delvas to make four payments of $3,140 due on
October 8, 2009; November 8, 2009; December 8, 2009; and January
8, 2010.  It alleges that the Delvas made each of the four
required payments.  However, the Delvas do not provide a copy of
the alleged September 8, 2009, offer, and the dates of payment
appear to overlap with the dates of payment for the November 14,
2009, Special Forbearance Agreement that both parties agree was
offered and accepted.  I need not resolve whether the allegation
of a September 8, 2009, offer and subsequent acceptance is
plausible because the Delvas' claim of G.L. c. 93A violation does
not depend on this first alleged Special Forbearance Agreement.

[3]  The Delvas jointly sent ASC much of their paperwork, and ASC
appears to have alternately addressed the two jointly and Maxo
Delva alone.  The loan is in Maxo Delva's name.

Subsequently, Delva again sent ASC loan modification application materials and ASC again considered Delva for a potential modification.  On April 14, 2010, ASC contacted Delva and offered him a Special Forbearance Agreement.  The offer noted that "investor approval is still pending" and stated:

> Upon successful completion of the Agreement, your loan will not be contractually current.  Since the installments may be less than the total amount due, you may still have outstanding payments and fees.  Any outstanding payments and fees will be reviewed for a loan modification.  If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement.  An additional contribution may be required.

It also stated:

> The lender is under no obligation to enter into any further agreement and this Agreement shall not constitute a waiver of the lender's right to insist upon strict performance in the future.

The Special Forbearance Agreement required the Delvas to make four payments: $5,310.21 due on April 29, 2010; $4,053.07 due on May 29, 2010; $4,5053.07 due on June 29, 2010; and $4,053.07 due on July 29, 2010.  The Delvas sent in each of these four payments.  The parties dispute whether the Delvas made the payments on time.

On October 21, 2010, ASC approved Maxo Delva for a permanent loan modification.  Under the terms of the loan modification, ASC required Delva to make an initial payment of $8,103.53.  After the initial payment was made, the agreement required modified loan payments of $2,745.40 each month.  The agreement required

4

Delva to return a number of documents and to provide the payment
of $8,103.53 in order to complete the modification.  It stated:

> TIME IS OF THE ESSENCE:
> If the above documents and payments are not received within
> ten (10) business days from the date of this letter, we will
> conclude that you are no longer interested in modifying your
> existing loan and will cancel your request for a
> modification.

Maxo Delva signed and returned the loan modification agreement to
ASC.  The Delvas could not afford the $8,103.53 payment and he
did not include the payment.

### B.    *Procedural Background*

On January 10, 2012, the Delvas filed this case at the
Plymouth County Superior Court.  ASC and U.S. Bank National
Association were named as Defendants.  The Delvas alleged that
the Defendants had (1) breached the covenant of good faith and
fair dealing, (2) engaged in unfair and deceptive business
practices in violation of G.L. c. 93A, (3) violated the Real
Estate Settlements and Procedures Act, and (4) violated the Truth
in Lending Act.

The Defendants moved to dismiss the complaint.  At a hearing
on March 23, 2012, I granted U.S. Bank National Association's
motion to dismiss and granted ASC's motion to dismiss all claims
with the exception of the G.L. c. 93A claim.  ASC now moves for
summary judgment with respect to the one remaining claim.

## II.  STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.  A fact is 'material' if it has the potential of determining the outcome of the litigation." *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 125 (1st Cir. 2012) (quoting *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009)).

The Delvas "may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." *Rockwood v. SKF USA Inc.*, 687 F.3d 1, 9 (1st Cir. 2012) (quoting *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006)).  They "must be able to point to specific, competent evidence to support [their] claim." *Id.* (quoting *Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 18 (1st Cir. 1998)).  In evaluating this evidence, I "must construe the record in the light most favorable to the nonmovant and resolv[e] all reasonable inferences in that party's favor while safely ignoring conclusory allegations, improbable inferences, and unsupported speculation." *Collins v. Univ. of N.H.*, 664 F.3d 8,

14 (1st Cir. 2011) (alteration in original) (internal quotation
marks omitted).

### III.  ANALYSIS

The sole remaining claim in this case asserts that ASC
violated G.L. c. 93A.  G.L. c. 93A prohibits "unfair or deceptive
acts or practices in the conduct of any trade or
commerce . . . ."  G.L. c. 93, § 2(a).  G.L. c. 93A does not
specifically define "unfair" or "deceptive."  The Massachusetts
Supreme Judicial Court has held that conduct is "deceptive" when
it has "the capacity to mislead consumers, acting reasonably
under the circumstances, to act differently from the way they
otherwise would have acted . . . ."  *Aspinall v. Philip Morris
Cos., Inc.*, 813 N.E.2d 476, 488 (Mass. 2004).  Massachusetts
courts have not explicitly defined "unfair" conduct.  *Okoye v.
Bank of N.Y. Mellon*, Civ. A. 10-11563-DPW, 2011 WL 329686, at *6
(D. Mass. July 28, 2011); *Fernandes v. Havkin*, 731 F. Supp. 2d
103, 116 (D. Mass. 2010); *In re Pharmaceutical Indus. Average
Wholesale Litig.*, 491 F. Supp. 2d 20, 93 (D. Mass. 2007).

The Supreme Judicial Court has held that "[a]lthough whether
a particular set of acts, in their factual setting, is unfair or
deceptive is a question of fact . . . the boundaries of what may
qualify for consideration as a c. 93A violation is a question of
law."  *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259
(Mass. 2008).  "In determining whether a practice violates

Chapter 93A, we look to '(1) whether the practice . . . is within
at least the penumbra of some common-law, statutory, or other
established concept of fairness; (2) whether it is immoral,
unethical, oppressive, or unscrupulous; [and] (3) whether it
causes substantial injury to consumers (or competitors or other
businessmen).'" *Mass. Eye and Ear Infirmary v. QLT
Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005)
(quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d
915, 917 (Mass. 1975)) (alterations in original).  A court should
"focus on the nature of challenged conduct and on the purpose and
effect of that conduct as crucial factors in making a G.L. c. 93A
fairness determination." *Mass. Emp'rs Ins. Exch. v. Propac-Mass,
Inc.*, 648 N.E.2d 435, 438 (Mass. 1995).  The court "must evaluate
the equities between the parties" and may consider "[w]hat a
defendant knew or should have known" and "a plaintiff's conduct,
his knowledge, and what he reasonably should have known . . . ."
*Swanson v. Bankers Life Co.*, 450 N.E.2d 577, 580 (Mass. 1983).

      The Delvas advance four possible bases for finding a G.L.
c. 93A violation on the part of ASC.  With respect to each, they
have failed to establish a genuine dispute of material fact.

      **First**, the Delvas state that "Plaintiff[]s' chapter 93A
claim rests primarily on defendant's failure to abide by the
[Special Forbearance Agreement] and apparent deliberate
mishandling of necessary documents in an attempt to dissuade

Plaintiff[]s from continued seeking of a viable modification."

I dismissed the contract claim at a previous hearing because the Delvas cannot point to any part of the Special Forbearance Agreement that ASC violated.  ASC stated that it would consider the Delvas for HAMP, and it did so.  Indeed, it offered them a permanent loan modification.  For the same reasons that I dismissed the breach of contract claim for failure to plead sufficient facts, I now grant judgment on the G.L. c. 93A claim, to the extent that it is premised on the same theory, for failure to provide sufficient evidence to create a genuine dispute of material fact.

With respect to the Delvas' claim that ASC deliberately mishandled necessary documents, the summary judgment record includes no evidence of deliberateness.  While the Verified Complaint does state that ASC repeatedly asked for documents that had already been provided to it, "[w]ithout further factual detail demonstrating unfairness, as opposed to clerical error or mere negligence, [the] claim for a violation of Chapter 93A cannot be sustained."  *Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 2d 100, 103 (D. Mass. 2011).  *See Baena v. KPMG LLP*, 453 F.3d 1, 3 (1st Cir. 2006) ("To apply at all, [G.L. c. 93A] requires a level of fault going beyond mere negligence."); *Brown v. Bank of Am. Corp.*, Civil Action No. 10-11085, 2011 WL 1311278, at *3 (D. Mass. Mar. 31, 2011) ("The plaintiff has alleged no

facts that suggest this error rose above the level of mere negligence or caused her actual harm.  A Chapter 93A violation cannot be satisfied by such a low level of error.").  The Delvas do not establish a genuine dispute of material fact with regard to the unfairness or deception of ASC's allegedly faulty document processing.

**Second**, the Delvas assert that "Plaintiff was led to believe that he would be entitled to a permanent loan modification if he complied with his obligations under the [Special Forbearance Agreement], and was induced into making three- and four-monthly loan payments on three different occasions."  If any evidence of record supported these allegations, the Delvas would have established a genuine dispute of material fact.  *See Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 137 (D. Mass. 2011) ("The complaint alleges that plaintiff was led to believe that he would be entitled to a permanent loan modification if he complied with his obligations under the [forbearance agreement], and was induced into making three loan payments . . . . At this stage in the litigation, that is enough to sustain the claim.") (internal quotation marks omitted).  However, the summary judgment record does not include any evidence in support of the Delvas' argument.

The record reveals no evidence that ASC led the Delvas to believe that they would be entitled to a permanent loan

modification.  The offer letter with respect to the Special
Forbearance Agreement stated only that once the three payments
were made, ASC would *review* Maxo Delva's eligibility for a
permanent modification.  The Delvas proffer no evidence that ASC
stated otherwise in any other context.  Moreover, ASC offered
Delva a permanent loan modification.  The record includes no
evidence that ASC offered the Special Forbearance Agreement while
knowing or intending that the permanent loan modification would
be unattainable for the Delvas.  Where "[t]he only factual
allegations are . . . that defendants offered a modification
subject to a fee that the [mortgagors] believed was too
high . . . . the complaint does not state a claim that rises to
the level of a Chapter 93A violation." *Maldonado v. AMS
Servicing LLC*, Civil Action Nos. 11-40044-FDS, 11-40219-FDS, 2012
WL 220249, at *7 (D. Mass. Jan. 24, 2012).

   **Third**, the Delvas assert that "Defendant refused to provide
the data used in its calculation of eligibility."  If any
evidence supported this allegation, the Delvas might arguably
have established a genuine dispute of material fact.  *See
Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 137
(D. Mass. 2011) (The complaint "appears to allege that defendant
refused to provide the data used in its calculation of
eligibility . . . .  At this stage in the litigation, that is
enough to sustain the claim.").  However, the summary judgment

record includes no mention of a request for or a refusal to provide the data used in ASC's eligibility calculation.

**Fourth**, the Delvas assert that "defendant disregarded the agreement, refused to modify the loan, and instead initiated foreclosure proceedings."  If any evidence supported this allegation, the Delvas might also have arguably established a genuine dispute of material fact. *See Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 137 (D. Mass. 2011) (The complaint "alleges that defendant 'disregarded' the agreement, refused to modify the loan, and instead initiated foreclosure proceedings . . . .  At this stage in the litigation, that is enough to sustain the claim.").  However, there is no evidence in the summary judgment record that ASC disregarded any of the agreements or refused to modify the loan.  ASC agreed to consider a loan modification, and indeed it both considered and offered a loan modification.  The Delvas rejected the loan modification offer by failing to pay the required fee.  While there is evidence in the record that foreclosure proceedings have been initiated (by U.S. Bank National Association), that alone is insufficient ground for a claim against ASC pursuant to G.L. c. 93A.

The Delvas do not provide evidentiary or legal support for their arguments.  They are unable to establish a genuine dispute of material fact with respect to any alleged violation of G.L.

c. 93A.  Consequently, judgment is warranted for ASC.

## IV.  DISPOSITION OF THE CASE

In the ordinary circumstance, based upon this Memorandum and Order and my oral orders at the hearing in this matter on March 23, 2012, which together would require final judgment for the defendants, all that remains to dispose of this case would be entry of judgment by the Clerk.  However, in the interim since I granted the motion to dismiss as to Defendant U.S. Bank National Association on March 23, 2012, grounds for recusal on matters involving U.S. Bank National Association have arisen.  As the result of the death of a family member on May 5, 2012, and pending the settlement of the estate, I may now be deemed to have a "financial interest" within the meaning of 28 U.S.C. § 455(b)(4), in the Defendant U.S. Bank National Corporation.  As a consequence I believe I am prevented from taking any further action--such as directing entry of final judgment--affecting the interests of U.S. Bank National Association.

While I have not viewed myself as disqualified from ruling on the remaining issue involving only ASC and I do so in this Memorandum and Order, I believe I must return the case to the Clerk for reassignment to another judicial officer.  In doing so I do not wish to be understood as ruling that entry of final judgment is the only action available.  Rather, as with all matters transferred before final judgment is entered, the

prudential doctrine of law of the case would permit the transferee judicial officer to revisit any and all interlocutory orders I have entered.

## V. CONCLUSION

For the reasons set forth above, I GRANT ASC's Motion for Summary Judgment (Dkt. No. 15) and by separate Memorandum and Order of Recusal enter my own recusal from any further proceedings in this matter and direct the Clerk to return this case.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE